**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Jon-Paul Guitard

    v.                                 Case No. 11-cv-194-PB

New Hampshire Department of
Corrections, Division of Medical
and Forensic Services


**O R D E R**


Before the court is the complaint filed by pro se plaintiff, Jon-Paul Guitard, asserting claims that, while incarcerated at the New Hampshire State Prison ("NHSP") in Concord, New Hampshire, he suffered medical malpractice and received inadequate medical care, in violation of his rights under the Eighth Amendment.  The named defendant is the NHSP Medical Department.  The matter is before the court for preliminary review, to determine if Guitard has stated a claim upon which relief can be granted.  <u>See</u> 28 U.S.C. § 1915A; United States District Court, District of New Hampshire, Local Rule ("LR") 4.3(d)(2).

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff or
petitioner commences an action pro se, the magistrate judge
conducts a preliminary review.  Pro se pleadings are construed
liberally to avoid inappropriately stringent rules and
unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94
(2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97,
106 (1976), to construe pleadings liberally in favor of pro se
party); Castro v. United States, 540 U.S. 375, 381 (2003).  The
magistrate judge may issue a report and recommendation after the
initial review, recommending that claims be dismissed if the
court lacks subject matter jurisdiction, the defendant is immune
from the relief sought, the complaint fails to state a claim
upon which relief may be granted, the allegation of poverty is
untrue, or the action is frivolous or malicious.  See LR
4.3(d)(2) (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)).

To determine if the complaint states any claim upon which
relief could be granted, the court applies a standard analogous
to that used in reviewing a motion to dismiss filed under Fed.
R. Civ. P. 12(b)(6).  The court decides whether the complaint
contains sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, No. 09-2207, 2011 WL 1228768, *9 (1st Cir. Apr. 1, 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action."  Id. (citations, internal quotation marks and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Ocasio-Hernández, 2011 WL 1228768 at *9.  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly,

550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, ___ U.S. at ___, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 2011 WL 1228768 at *9.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

## Background

In a sparsely-worded form complaint signed by Guitard on April 12, 2011, Guitard asserts claims of medical malpractice and violations of his right to adequate medical care under the Eighth Amendment, arising from events occurring prior to April 12, 2008.  Specifically, Guitard asserts that on March 27, 2008, he was rushed to the Concord Hospital Emergency Department for abdominal pain.  He underwent "exploratory" surgery, to

4

determine if he was suffering from a perforated colon due to diverticulitis, or a "more proximal perforation in the GI tract." Guitard was fitted with an ostomy bag, which he must use for the rest of his life, "due to the lack of care" he received while at the NHSP. Guitard had gone to sick call at NHSP for stomach problems and reported all of his stomach issues to the nurses, but nobody listened to him before March 27, 2008.

No one told Guitard that he need to file a grievance regarding his medical care claim, or that his claims might be subject to a statute of limitations. Guitard had intended to await parole before filing an action, so that he would not be harshly treated in prison, but ultimately chose to file while still incarcerated.

The claims asserted in the complaint (doc. no. 1) are:

1.   Guitard suffered a violation of his Eighth Amendment right to receive adequate medical care when nurses in the NHSP Medical Department, with deliberate indifference to his serious medical needs, failed to attend to Guitard's stomach problems prior to March 27, 2008.

2.   The NHSP Medical Department staff engaged in professional negligence in failing to attend to Guitard's stomach problems prior to March 27, 2008, causing Guitard to

undergo surgery to determine the location and extent of an
apparent perforation of his gastro-intestinal tract, which
resulted in his life-long need for an ostomy bag and other
injuries.

**Discussion**

I.   Eleventh Amendment

Claims cannot be maintained in federal court against
unconsenting states and their agencies, absent Congressional
abrogation of the State's sovereign immunity.  See Fantini v.
Salem State Coll., 557 F.3d 22, 33 (1st Cir. 2009); see also
P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S.
139, 146 (1993).  Neither a waiver of sovereign immunity nor any
Congressional abrogation of that immunity exists as to the
claims asserted here against the NHSP Medical Department:  New
Hampshire has not waived its immunity for such claims in federal
court, and Congress did not abrogate Eleventh Amendment immunity
through 42 U.S.C. § 1983, see Will v. Mich. Dep't of State
Police, 491 U.S. 58, 67 (1989).

The named defendant is the NHSP Medical Department, a state
agency.  All claims asserted against that agency are subject to
dismissal under the Eleventh Amendment.  Because Guitard appears
to hold individual nurses responsible for failing to attend to

his stomach problems prior to March 27, 2008, the court will provide Guitard an opportunity to amend the complaint to name individual nurses or other NHSP staff as defendants, before recommending dismissal of this case.  In the interest of judicial efficiency, the court shall identify in the discussion below additional issues that require clarification through an amended complaint, to be filed by Guitard, before the court can find that the complaint states any claim upon which relief might be granted.

II.  Section 1983 Claim

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983; Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  Here, Guitard has claimed that unnamed nurses in the NHSP Medical Department, all of whom are state actors, violated rights accruing to him under federal law when they, with deliberate indifference, failed to provide him with adequate medical care.  As such, this action presents a medical care claim arising under § 1983, as well as a state law medical malpractice claim, as to those nurses.

III. <u>Eighth Amendment</u>

    The Eighth Amendment shields convicted prison inmates from
prison officials providing them with inadequate medical care
while acting with deliberate indifference to their serious
medical needs.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 831 (1994).
The Supreme Court has adopted a two-part test for reviewing
medical care claims under the Eighth Amendment.  <u>See</u> <u>id.</u> at 834.
A court must first determine if the prisoner has alleged facts
sufficient to show that he or she has not been provided with
adequate care for a "serious medical need."  <u>Id.</u>  Second, the
court must determine if the complaint contains sufficient
allegations to show that defendants acted with deliberate
indifference in failing to address that serious need.  <u>See</u> <u>id.</u>
Allegations that simply show "substandard care, malpractice,
negligence, inadvertent failure to provide care, and
disagreement as to the appropriate course of treatment are all
insufficient to prove a constitutional violation."  <u>Ruiz-Rosa v.
Rullan</u>, 485 F.3d 150, 156 (1st Cir. 2007).

    A.   <u>Serious Medical Need</u>

    A serious medical need is one that involves a substantial
risk of serious harm to the prisoner if it is not adequately
treated.  <u>See</u> <u>Barrett v. Coplan</u>, 292 F. Supp. 2d 281, 285

(D.N.H. 2003); see also Gaudreault v. Mun'y of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention").  If a medical care claim is based on delayed provision of care, the inquiry is whether the delay caused or gave rise to a substantial risk of serious harm to the prisoner.  See Chambers v. N.H. Prison, 562 F. Supp. 2d 197, 200 (D.N.H. 2007).

Here, Guitard suffered stomach problems that led him to go to sick call at NHSP.  He states that he complained about all of his problems to nurses in the NHSP Medical Department, but they did not listen to him.  On March 27, 2008, he was rushed to the Concord Hospital for emergency abdominal surgery due to stomach pain, where it was determined that he had suffered a perforation in his gastro-intestinal tract.  As a result of the perforation, he has to use an ostomy bag for the rest of his life.  Taking all of the factual allegations in the complaint to be true, the court finds that the delay in properly treating or diagnosing Guitard's serious stomach problems constituted inadequate care and gave rise to a substantial risk of serious harm.

B.   Deliberate Indifference

To be found deliberately indifferent, a prison official must be both subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also actually draw the inference. See Farmer, 511 U.S. at 837.  Deliberate indifference "may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with 'actual knowledge of impending harm, easily preventable.'"  Ruiz-Rosa, 485 F.3d at 156 (citation omitted).  "In order to establish deliberate indifference, the complainant must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain."  Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir. 2010) (internal citation and quotations omitted).  Deliberate indifference may be found "in wanton decisions to deny or delay care, where the action is reckless, not in the tort law sense but in the appreciably stricter criminal-law sense."  Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) (internal citation and quotations omitted).

Guitard has alleged in the complaint that he told the nurses about his stomach problems, but "nobody would listen" to him before he was rushed to the hospital for surgery on March

27, 2008.  These allegations, as asserted, are not sufficient to show deliberate indifference on the part of those unnamed defendant nurses.  To clarify who knew what about his stomach problems, and the circumstances surrounding their failure to listen to him, Guitard would need to file an amended complaint including supplemental information about the stomach problems he described to the NHSP Medical Department, the dates on and manner in which he made nurses aware of these problems, and any treatment or medical attention he received for those problems in response to his complaints.  Any amended complaint shall conform with the directions set forth at the conclusion of this Order.

III. Malpractice Claims

This court has supplemental jurisdiction over the state law claims that arise out of the same case or controversy as the section 1983 claims.  See 28 U.S.C. § 1367.  Under state law, a plaintiff states a viable claim of medical malpractice in alleging that he suffered injuries proximately caused by the doctor or nurse's failure to provide care consistent with the standard of reasonable professional practice at the time the care was rendered.  See Beckles v. Madden, 160 N.H. 118, 124, 993 A.2d 209, 214 (2010) (citing N.H. Rev. Stat. Ann. 507-E:2). Taking as true all facts alleged in the complaint and the

11

reasonable inferences drawn therefrom, the court finds that Guitard has stated a claim of medical malpractice against those nurses in the NHSP Medical Department who did not listen to him when he described his stomach problems prior to March 27, 2008.

## IV.   Statute of Limitations

The statute of limitations applicable to Guitard's section 1983 and medical malpractice claims is three years.  See N.H. Rev. Stat. Ann. § 508:4; see also Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir. 1991) (limitation period applicable to section 1983 claim is found in general personal injury statute of state where claim arises).  The statute of limitations on such claims begins to run when the plaintiff knew or should have known of his injury.  See Cao v. Puerto Rico, 525 F.3d 112, 115 (1st Cir. 2008); see also McCollum v. D'Arcy, 138 N.H. 285, 287, 638 A.2d 797, 798 (1994).

Here, the facts alleged by Guitard raise a substantial question regarding whether his claims are time-barred.  Guitard signed the complaint in this action on April 12, 2011, and the complaint was filed on April 21, 2011, more than three years after he suffered the injuries at issue.

As to both the state law claim and the section 1983 claim, the possibility exists that Guitard may show a basis for equitably tolling the statute of limitations, which would enable him to maintain this action.  Equitable tolling is the exception and not the rule; it is applied only in extraordinary circumstances.  See Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 71 (1st Cir. 2005).

Under federal law, "'excusable ignorance of the statute of limitations caused by some misconduct of the defendant'" may be sufficient to toll the statute of limitations.  Id. at 72 (1st Cir. 2005) (citation omitted).  Similarly, under New Hampshire law, "'[c]onduct of a nature giving rise to an equitable estoppel may be sufficient to toll the running' of a statute of limitations."  Pierce v. Metro. Life Ins. Co., 307 F. Supp. 2d 325, 333 (D.N.H. 2004) (citations omitted).  Such conduct under state law may include fraudulent concealment of a claim, or other affirmative conduct persuading a plaintiff from filing suit, not including silence or inaction unless the defendant had knowledge and a duty to make a disclosure about the statute of limitations to the plaintiff.  See id. at 334 (citing cases).

Here, Guitard has indicated that he did not file suit sooner for fear of a reprisal in prison, and because no one told

13

him about the statute of limitations.  Without further elaboration on the grounds upon which he based his assertion that he feared reprisal – given that he ultimately chose to file suit notwithstanding that fear, and unless Guitard amends the complaint to show that defendants took steps to dissuade him from filing suit, the court will not find a basis for equitably tolling the statute of limitations on the claims in this action. Guitard, in his amended complaint, should include facts that demonstrate why he is entitled to equitable tolling of the statute of limitations, in order to show why this action should not be dismissed as time-barred.

## Conclusion

For the foregoing reasons, the court grants Guitard leave to file an amended complaint within 30 days from the date of issuance of this Order.  In the amended complaint, Guitard shall state, with specificity, the identity of any persons who may be responsible for his injuries and the possibility of equitable tolling of the statute of limitations, including the following facts:

> 1.   The names of any nurses or other prison staff whom Guitard considers responsible for failing to attend to his medical needs at NHSP.

2.   The steps Guitard took to alert the prison staff to his need for medical care prior to March 27, 2008, including any oral statements, medical request slips, or grievances, relating to his stomach issues, which he submitted to NHSP staff prior to March 27, 2008.

2.   The date Guitard was discharged from the Concord Hospital, his discharge diagnosis, and his physical and mental state during and immediately following his hospital stay that began on March 27, 2008.

3.   The date when he was first made aware that he suffered an abdominal injury as a result of care that he received at NHSP.

4.   Any reason why Guitard failed to file a complaint in this case prior to April 21, 2011, including the specific grounds upon which he based a fear of harsh treatment in prison for filing a claim in this court prior to being paroled; and any other steps that prison staff members may have taken to persuade him not to file a complaint sooner.


SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

Date:  May 17, 2011

cc:  Jon-Paul Guitard, pro se

LBM:nmd