**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Jon-Paul Guitard

   v.                                      Civil No. 11-cv-194-PB

New Hampshire Department of
Corrections, Division of Medical
and Forensic Services


## REPORT AND RECOMMENDATION

Before the court is the original complaint (doc. no. 1) and an addendum with exhibits (doc. no. 8) filed by pro se plaintiff, Jon-Paul Guitard.  Guitard filed the addendum in response to this court's order (doc. no. 3) directing Guitard to identify individuals at the New Hampshire State Prison ("NHSP") who he claims are liable for denying him adequate medical care, and also directing him to show that his Eighth Amendment claims and medical malpractice claims are not time-barred.  The defendant named in the caption is the NHSP Medical Department, and the individuals named in the addendum are Brad Bowden, RN; Donna Mailias, RN; and Dr. Celia Englander, MD.  The complaint, before the court for preliminary review, is construed to consist of the original complaint (doc. no. 1) and the addendum, including the exhibits thereto (doc. no. 8).  See 28 U.S.C.

§ 1915A; Local Rule ("LR") 4.3(d)(2) (magistrate judge conducts preliminary review of prisoner complaints).

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff commences an action pro se, the magistrate judge conducts a preliminary review.  The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed for any of the following reasons:  the court lacks subject matter jurisdiction; the defendant is immune from the relief sought; the complaint fails to state a claim upon which relief may be granted; the allegation of poverty is untrue; or the action is frivolous or malicious.  See id. (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if a complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed.

2

R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at

3

555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted). In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

## Background

Guitard, an inmate at the New Hampshire State Prison ("NHSP"), underwent emergency surgery on March 26, 2008, to treat a perforated colon. At the time of his admission to the hospital, Guitard was in septic shock. Guitard was hospitalized for over a month, nearly all of his colon was removed, and he was fitted with an ostomy bag that he must use for the rest of his life. Guitard has asserted that two prison nurses and a doctor, defendants Bowden, Mailais, and Englander, engaged in

4

malpractice and provided him with constitutionally inadequate medical care at the prison for abdominal pain, attributable to diverticulitis, which caused his colon perforation and the sepsis that resulted in his hospitalization, surgery, and lifelong need for an ostomy bag.

The first reference to Guitard complaining to prison officials about abdominal pain or digestive problems appears in an inmate request slip, dated August 15, 2006, in which Guitard requested that Dr. Englander address Guitard's problem of diarrhea and pain.  Englander responded that she would "[a]bsolutely" be available to meet with him.

The prison arranged in December 2006 to have testing performed to evaluate Guitard's upper GI tract and small bowel function, to rule out Crohn's Disease.  Those tests, ordered by Dr. Englander, revealed mild gastroesophageal reflux disease and abnormal small bowel follow through.

On February 28, 2007, Guitard underwent an abdominal CT scan at the Catholic Medical Center, ordered by Brett Mooney, a nurse practitioner at the prison.  The physician interpreting the scan noted an impression that Guitard suffered from mild sigmoid diverticulitis and moderate sigmoid diverticulosis. Guitard was led to believe that the February 28, 2007, scan results were normal.

Dr. Englander's notes, dated May 12, 2008, state that a colonoscopy of Guitard performed at the Catholic Medical Center on May 23, 2007, revealed that Guitard had extensive diverticulosis.  The colonoscopy report is not part of the record before the court at this time.

In early January 2008, Guitard was undergoing an intense episode of personal and family stress, resulting from his daughter being reported missing for several months.  Guitard met with a staff member in the prison medical department to discuss mental health issues.  Guitard reported at that time that he had been throwing up several times per day since Christmas and that he had frequent diarrhea.  He told the staff member that medications prescribed for his "malabsorption" problem had kept his diarrhea under control until the situation with his daughter arose, and now he had more frequent diarrhea.  The staff member's plan of care for Guitard addressed only the mental health issues, and not the digestive problems.

On January 31, 2008, Guitard finished a course of "prophylactic antibiotics," prescribed for reasons that are not stated in the medical records before the court.  The court infers from the facts alleged that the antibiotics were not prescribed for Guitard's stomach problems.  Guitard has

specifically asserted that he received no treatment for diverticulitis while in prison.

On February 6, 2008, Guitard reported to a nurse that he was suffering from pain and swelling in his lower legs.  Guitard had an extensive history of lower leg cellulitis and Group B strep, and presented with symptoms apparently consistent with cellulitis.  Guitard asserts that he reported at that time that he had stomach pain, particularly aggravated when he took ibuprofen.  The nurse on February 6, 2008, advised Guitard to elevate his legs, to take ibuprofen for pain, and to return the next day for sick call.

On February 7, 2008, Guitard met with Dr. Englander and Nurse Bowden for an examination of Guitard's left lower leg. Englander prescribed an antibiotic to treat Guitard's cellulitis.

The progress notes for February 7 state that after Dr. Englander examined Guitard's leg, Guitard started to ask the doctor questions unrelated to his leg problems.  Bowden at that time warned Guitard "to stay on task," and Guitard became argumentative.  Guitard asserts that when he tried to report his stomach pain to Dr. Englander, Dr. Englander ignored him. Bowden told Guitard that he was a "whiny bitch" and ordered him to return to his unit and threatened to call an officer.

As recorded in Guitard's prison medical records, on March 20, 2008, Guitard reported to defendant Bowden that he had been vomiting for four days, and that milk of magnesia provided no relief.[1]  Bowden took Guitard's vital signs, palpated and listened to Guitard's abdomen, and found Guitard's abdomen to be soft with normal active bowel sounds.  Bowden noted minimal tenderness on both sides of Guitard's lower abdomen.  Bowden's notes state that he referred Guitard's chart to a doctor or a nurse practitioner.

The next entry in the medical records before the court is a Concord Hospital record dated March 26, 2008; Guitard's complaint is silent as to whether he received any medical care or treatment after he saw Bowden, prior to March 26, 2008.  On March 26, 2008, the prison rushed Guitard to the Concord Hospital.  In the Emergency Department, Guitard was suffering from severe, persistent abdominal pain.  Guitard's abdomen, upon admission, was rigid with diffuse peritonitis; his blood pressure was low, he was sweating profusely, and his heart was racing.  The surgeon's operative report indicates that an obstructive sigmoid lesion, likely diverticulitis, caused

---

[1]The copier cut off part of the date of the medical record filed by Guitard as an exhibit here, regarding his meeting with Bowden.  The court infers, but cannot state with certainty, that Guitard presented his symptoms to Bowden on March 20, 2008, and not on February 20, 2008.

Guitard's transverse colon to perforate, and septic shock
ensued.  Fecal matter had entered Guitard's abdominal cavity,
and had been there for an undetermined amount of time.  Guitard
underwent two surgeries over the next several days to repair the
damage and to remove necrotic tissue.  Guitard spent weeks
thereafter in intensive care, with a tracheostomy, on a
ventilator and on a feeding tube, prior to his discharge on May
7, 2008.  Guitard was discharged to the prison infirmary with an
ostomy bag and with sores and wounds that required skilled care.

When Guitard met with the surgeon for a post-operative
consultation on May 22, 2008, ordered by Dr. Englander, Guitard
learned for the first time about everything that had happened to
him, including, presumably, the surgeon's belief that
obstructive lesions resulting from diverticulitis in his sigmoid
colon likely caused the perforation of his transverse colon.
Guitard also learned at that time that he would have an ostomy
bag for the rest of his life.

The claims asserted in the complaint (doc. nos. 1 and 8)
are the following[2]:

1.   Guitard suffered a violation of his Eighth
Amendment right to receive adequate medical care when

---

[2] The claims identified herein are construed to be the
claims asserted in this case.  If Guitard disagrees with this
identification of his claims, he must properly file an objection
to this report and recommendation, or a motion to amend the
complaint.

defendants, with deliberate indifference to Guitard's
serious medical needs, failed properly to diagnose and
treat Guitard's stomach pain and digestive symptoms,
suggestive of diverticulitis, in the weeks prior to March
26, 2008.

    2.   Defendants engaged in professional negligence by
failing to sufficiently attend to Guitard's stomach
problems prior to March 26, 2008, which resulted in a colon
perforation, emergency surgeries, and ensuing injuries,
including a life-long need for an ostomy bag.

**Discussion**

I.   Eleventh Amendment

Claims cannot be maintained in federal court against
unconsenting states and their agencies, absent Congressional
abrogation of the State's sovereign immunity.  See Fantini v.
Salem State Coll., 557 F.3d 22, 33 (1st Cir. 2009); see also
P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S.
139, 146 (1993).  New Hampshire has not waived its immunity for
such claims in federal court, and Congress did not abrogate
Eleventh Amendment immunity through 42 U.S.C. § 1983, see Will
v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).

The named defendant is the NHSP Medical Department, a state
agency.  All claims asserted against that agency are subject to
dismissal under the Eleventh Amendment.  Accordingly, the court
should dismiss all claims asserted against the NHSP Medical
Department, leaving only those claims asserted against the

individuals, Bowden, Mailias, and Englander, who are identified
in the addendum.

## II.  Section 1983 Claim

Section 1983 creates a cause of action against those who,
acting under color of state law, violate federal constitutional
or statutory law.  See 42 U.S.C. § 1983; Wilson v. Town of
Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  Here, Guitard has
claimed that Brad Bowden, RN; Donna Mailias, RN; and Dr.
Englander, of the NHSP Medical Department, violated rights
accruing to him under federal law when they, with deliberate
indifference, failed to provide him with adequate medical care.
As such, this action presents a medical care claim arising under
§ 1983.  Guitard has also asserted a medical malpractice claim
arising under state law as to those individuals.

## III. Statute of Limitations

If the allegations in the complaint "'leave no doubt that
an asserted claim is time-barred,'" dismissal is appropriate for
failure to state a claim upon which relief can be granted.  See
Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010); see also
Jones v. Bock, 549 U.S. 199, 215 (2007).  The statute of
limitations applicable to Guitard's section 1983 and medical
malpractice claims is three years.  See N.H. Rev. Stat. Ann.

("RSA") § 508:4; see also Gilbert v. City of Cambridge, 932 F.2d 51, 57 (1st Cir. 1991) (limitation period applicable to section 1983 claim is found in general personal injury statute of state where claim arises).

State and federal law provide similar rules for when § 1983 claims and malpractice claims accrue, if those claims are not readily apparent.  Federal law provides that a § 1983 claim accrues when plaintiff knew or should have known of his injury. See Cao v. Puerto Rico, 525 F.3d 112, 115 (1st Cir. 2008); cf. Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 38-39 (1st Cir. 2006) ("'Under federal law, the statute of limitations on a Bivens claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.'" (citation omitted)). State law similarly follows the discovery rule for tort claims that are not readily apparent.  See McNamara v. City of Nashua, 629 F.3d 92, 95 (1st Cir. 2011) (discovery rule governed accrual date for plaintiff's state law tort and contract claims and § 1983 due process claim); see also RSA § 508:4, I (malpractice actions may be brought only within three years of date of discovery of injury and its causal relationship to relevant act or omission, or date when such injury and causal relationship could have reasonably been discovered).

Here, Guitard signed the complaint in this action on April 12, 2011, and the complaint was filed on April 21, 2011, more than three years after he suffered the bowel obstruction and perforation at issue.  While Guitard was hospitalized in March, April, and early May 2008, and during his period of recuperation in the infirmary thereafter, he was in no condition to pursue any claim or exhaust any administrative remedies.

Furthermore, the facts alleged in the complaint suggest that Guitard did not know and could not reasonably have known facts relating to the cause of his injury until May 22, 2008. On that date, Dr. Richard Murphy, the surgeon who operated on him, told Guitard everything that had happened to Guitard relating to his surgery, including, the court infers, that diverticulitis likely caused his colon perforation.  The allegations in the complaint suggest that Guitard did not know that he had diverticulitis and diverticulosis prior to that time, or that he was at risk for a colon perforation. Accordingly, at this stage of the case, the allegations are not sufficiently clear regarding Guitard's actual knowledge or the facts that he should have known regarding his March 2008 injury to enable the court to dismiss either of Guitard's claims as time-barred.

IV.  Eighth Amendment

The Eighth Amendment shields convicted prison inmates from prison officials providing them with inadequate medical care while acting with deliberate indifference to their serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 831 (1994). The Supreme Court has adopted a two-part test for reviewing medical care claims under the Eighth Amendment.  See id. at 834. A court must first determine if the prisoner has alleged facts sufficient to show that he or she has not been provided with adequate care for a "serious medical need."  Id.  Second, the court must determine if the complaint contains sufficient allegations to show that the defendants acted with deliberate indifference in failing to address that serious need.  See id. Allegations that simply show "substandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation."  Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007).

A.  Serious Medical Need

A serious medical need is one that involves a substantial risk of serious harm to the prisoner if it is not adequately treated.  See Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); see also Leavitt v. Corr. Med. Servs., Inc., 645

F.3d 484, 503 (1st Cir. 2011) (serious medical need is one
"'that has been diagnosed by a physician as mandating treatment,
or one that is so obvious that even a lay person would easily
recognize the necessity for a doctor's attention'" (citation
omitted)).  If a medical care claim is based on delayed
provision of care, the inquiry is whether the delay caused or
gave rise to a substantial risk of serious harm to the prisoner.
See Chambers v. N.H. Prison, 562 F. Supp. 2d 197, 200 (D.N.H.
2007).

Here, Guitard suffered stomach pain, as well as vomiting
and diarrhea, in the weeks leading up to March 26, 2008.  Those
conditions are asserted to have been causally related to the
bowel perforation for which he was hospitalized on March 26,
2008.  Guitard has thus shown that he had a serious medical need
requiring medical attention in the weeks leading up to the date
of his hospitalization.

B.    Deliberate Indifference

To be found deliberately indifferent, a prison official
must be both subjectively aware of facts from which the
inference could be drawn that a substantial risk of serious harm
exists, and he or she must also actually draw the inference.
See Farmer, 511 U.S. at 837; Leavitt v. Corr. Med. Servs., Inc.,
645 F.3d 484, 497 (1st Cir. 2011) (deliberate indifference is

"'a form of scienter in which the official culpably ignores or turns away from what is otherwise apparent'" (quoting Alsina-Ortiz v. Laboy, 400 F.3d 77, 82 (1st Cir. 2005))).  "[S]ubpar care amounting to negligence or even malpractice does not give rise to a constitutional claim."  Leavitt, 645 F.3d at 497 (citation omitted).  "The standard encompasses a narrow band of conduct:  . . . the treatment provided must have been so inadequate as to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind."  Id. (citations and internal quotations omitted).

Guitard has asserted in the complaint that he told defendants about his stomach problems, but defendants ignored him until he was rushed to the hospital for surgery on March 26, 2008.  Specifically, Guitard states that he complained about his problems on February 6 and 7, 2008, and on one other occasion, but defendants Mailias, Bowden, and Englander did not listen to his complaints.

### 1.   Mailias

A complaint lacks facial plausibility if it lacks sufficient factual content to allow the court to draw a reasonable inference that a particular defendant is liable for the misconduct alleged.  See Redondo Waste Sys. v. Lopez-Freytes, ___ F.3d ___, ___, 2011 WL 4916921, *2 (1st Cir. Oct.

18, 2011).  For the court to draw such an inference, the complaint must "allege facts linking each defendant to the grounds on which that particular defendant is potentially liable."  Id.  Guitard has failed to allege any facts in the complaint that link an individual named "Donna Mailias" to any actionable conduct affecting Guitard.  Accordingly, the court should dismiss the claim of an Eighth Amendment violation asserted against Mailias.

### 2.   Bowden and Englander

Guitard has asserted that on February 7, 2008, he tried to tell Dr. Englander and Nurse Bowden that he was suffering from stomach pain, but they ignored him.  Guitard further asserts that Bowden rudely cut him off when he was trying to complain about pain in his stomach, calling Guitard a "whiny bitch" and threatening to summon a guard if Guitard did not return to his unit.  The prison medical record for that date states that when Guitard attempted to ask Dr. Englander questions about issues unrelated to leg pain, Bowden told Guitard to "stay on task." Guitard asserts that he received no treatment thereafter at the prison, and no further diagnostic testing at that time, relating to his stomach pain.

Trained medical professionals are expected to identify potentially dangerous medical conditions based on patient

complaints, interpreted in light of their medical history.  It is safe to presume a physician like Dr. Englander and a registered nurse like Bowden are trained to take a medical history, to interpret medical records, and to recognize conditions, including digestive symptoms and pain, which could require further treatment, evaluation, or medical attention.

On February 7, 2008, Bowden and Englander had before them medical records specifically showing that Guitard had complained about frequent vomiting during the prior two months.  Guitard's history of diverticulitis and diverticulosis was well-documented in his medical records.  His medical records are replete with references to digestive symptoms, and the reports of outside specialists contacted by the prison which show that Guitard had diverticulosis and diverticulitis.  Construing the record favorably to Guitard, the court infers from the surgeon's conclusions about Guitard that trained medical professionals such as Bowden and Englander would be aware of the serious risks presented by a patient complaining of stomach pain who had a history of diverticulitis.  And, the record in this case shows that a colon perforation is a possible consequence of diverticulitis.

Construing the facts in Guitard's favor, the court presumes that Dr. Englander was aware both of Guitard's history of

diverticulitis at the time he complained about stomach pain to
her on February 7, 2008, and that proper treatment of his
underlying condition could reduce the risk of serious
complications.  Similarly, on this record, the court presumes
that Bowden, as a registered nurse, was aware that stomach pain
may indicate diverticulitis in a susceptible individual, and
presumably knew from Guitard's medical history that Guitard was
at risk therefor.  Bowden's responsibilities, at a minimum, when
presented with a patient like Guitard complaining of stomach
pain, would involve assisting him in getting the attention of a
physician.  Guitard alleges that Bowden actively prevented him
from addressing his complaints to the doctor.

Given these facts and reasonable inferences, the complaint
plausibly states a claim that Englander and Bowden acted with
subjective knowledge of a serious risk of harm to Guitard when
they allegedly ignored his stomach complaints during the
February 7, 2008, appointment, and that their failure to provide
treatment or testing of him in February or March 2008 put in
place a chain of events that culminated in his colon perforation
on March 26, 2008.  Bowden's March 20, 2008, examination of
Guitard and his plan to refer Guitard's chart to a doctor or
nurse practitioner on that date, given the facts alleged, and,
on this limited record, appeared to offer Guitard too little,

too late.  Moreover, there are no facts indicating that a doctor or nurse practitioner either reviewed Guitard's chart or saw him between March 20 and 26, the date he was sent to the hospital for emergency surgery.

In sum, construing the record favorably to Guitard, the court finds that the complaint plausibly alleges that Bowden's and Englander's failure to diagnose or treat Guitard's complaints before his hospitalization constituted a decision not to attend to a serious medical need, made "recklessly with 'actual knowledge of impending harm, easily preventable.'" Ruiz-Rosa, 485 F.3d at 156 (citation omitted).  Accordingly, the court has directed service of the Eighth Amendment claim on those defendants.

V.   Medical Malpractice

This court has supplemental jurisdiction over the state law claims that arise out of the same case or controversy as the section 1983 claims.  See 28 U.S.C. § 1367.  Under state law, a plaintiff states a viable claim of medical malpractice in alleging that he or she suffered injuries proximately caused by the doctor or nurse's failure to provide care consistent with the standard of reasonable professional practice at the time the care was rendered.  See Beckles v. Madden, 160 N.H. 118, 124, 993 A.2d 209, 214 (2010) (citing RSA § 507-E:2).  The plaintiff

20

has the burden of proving by expert testimony the standard of reasonable professional practice, the care provider's failure to act in accordance with that standard, and proximate causation. See RSA § 507-E:2.

### A.   Englander and Bowden

Taking as true all facts alleged in the complaint and the reasonable inferences drawn therefrom, the court finds that Guitard has stated a claim of medical malpractice against defendants Englander and Bowden, for their alleged failure to listen to his complaints and provide him with proper treatment when such treatment might have been effective in the weeks prior to March 26, 2008. Englander's potential liability on the claim is premised on the same factual allegations stating a claim that, acting with deliberate indifference to his serious medical need, she provided inadequate medical care to Guitard, in violation of his Eighth Amendment rights.  The facts alleged in the complaint describing Bowden's conduct on February 7, 2008, if taken as true, plausibly describe professional negligence. Calling a patient a "whiny bitch" and ordering him to leave when he is attempting to describe his symptoms cannot possibly qualify as providing care that meets any reasonable professional standard for any trained medical professional.

21

To establish proximate causation, a plaintiff must show that "defendant's conduct caused or contributed to cause the harm." Beckles, 160 N.H. at 125, 993 A.2d at 214. A fuller record, informed by expert testimony, could show that Bowden's and Englander's conduct on February 7, 2008, critically delayed the proper treatment or diagnosis of Guitard's diverticulitis. Such allegations give rise to a plausible claim of malpractice under state law as to Bowden and Englander.

### B.   Mailias

The complaint is devoid of any allegations concerning Nurse Donna Mailias's conduct. Therefore, the court should dismiss the malpractice claim asserted against Mailias.

### Conclusion

For the foregoing reasons, the court has directed service of the Eighth Amendment and medical malpractice claims against Nurse Brad Bowden, RN, and Dr. Celia Englander, MD. The remaining claims, including all claims asserted against defendant Nurse Donna Mailias, RN, and the NHSP Medical Department, should be dismissed.

Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the

specified time waives the right to appeal the district court's

order.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d

554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524

F.3d 5, 14 (1st Cir. 2008).


                                    Landya McCafferty
                                    United States Magistrate Judge

Date:  November 4, 2011

cc:  Jon-Paul Guitard, pro se

LBM:nmd